IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
AMERICAN FEDERATION OF       )
  GOVERNMENT  EMPLOYEES, et. al   )
                           )    CASE:  1:07-cv-00855 (HHK)
         Plaintiffs,       )
                           )
        v.            )
                           )
KIP HAWLEY, et. al,          )
                           )
        Defendants.     )
_____)

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs' hereby oppose Defendants' motion to dismiss.  The Defendants have not

established appropriate administrative, technical, and physical safeguards to insure the security

and confidentiality of personnel records as evidenced by the disclosure of private, personnel

information of approximately 100,000 former and current employees to include their names,

social security numbers, bank account numbers, and birthdates, in violation of the Aviation and

Transportation Security Act (ATSA) and the Privacy Act of 1974.  Defendants' failure to

establish the required safeguards was intentional.  Officials from the Transportation Security

Administration (TSA) have readily admitted before Congress that the TSA had failed to properly

encrypt or secure the data.  As such, the release of personnel data was not "a clearly unintended

incident."  Plaintiffs' are not asking the Court to speculate as to the hard drive's present location

and its possible future unauthorized use. There is no need to speculate since the TSA itself

admits that the hard drive's present location is not within TSA headquarters.  The malfeasance

{00237128.DOC}

lies in the release of the information itself and not on what financial damage is wrought by the release.  Furthermore, the ATSA does confer a private right of action upon federalized transportation screeners' whose very positions and few delineated rights were created by the ATSA and are now being trampled by the Defendants' actions.  Therefore, the Court is urged to deny the Defendants' motion to dismiss and accept jurisdiction to adjudicate the instant claims that the Defendants' violated the ATSA and Privacy Act.

## STATEMENT OF FACTS

As set forth in the Complaint, in 2001, Congress enacted the ATSA, Pub. L. 107-71, in large part to federalize security screening operations for passenger air transportation and intrastate air transportation under 49 U.S.C. §§44901 and 44935.  The ATSA created the TSA thus defining the agency's duties and authorities.  The ATSA explicitly mandates the Administrator to "enforce security-related regulations and requirements," as well as "oversee the implementation, and ensure the adequacy, of security measures at airports."  49 U.S.C. §114(f)(7)and (9).

Similarly, the Privacy Act requires agencies that maintain a system of records to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  5 U.S.C. §552a(e)(10). The TSA maintains a system of personnel records protected by the Privacy Act, that includes by name the social security number, date of birth, payroll information, bank account and routing information

for its current and former screening personnel.

On Thursday, May 3, 2007, the TSA became aware of a data security incident involving approximately 100,000 archived employment records of individuals employed by the agency from January 2002 until August 2005.  Specifically, an external hard drive containing personnel data, including but not limited to name, social security number, date of birth, payroll information, bank account and routing information [hereinafter "Personnel Data"], was discovered missing from a controlled area at the TSA Headquarters Office of Human Capital.

Since the filing of the instant complaint, officials from the TSA have represented to Congress that the missing Personnel Data was not protected with encryption or any electronic security technology as required by the Office of management and Budget.  See Birdis, *"Missing Computer drive with TSA personal data was unprotected,"* Associated Press (July 16, 2007). Additionally, the TSA has represented to Congress that it has disciplined employees with respect to the loss of Personnel Data.  *Id.*  Defendants remain unable to account for the present location of the external hard drive, or for the present location of the Personnel Data contained therein.

## ARGUMENT

For purposes of ruling on a motion to dismiss, a complaint must be viewed in the light most favorable to the Plaintiffs and all material allegations of the complaint must be accepted as true. *Warth v. Seldin,* 422 U.S. 490, 501, (1975); *Jacobs v. Barr*, 959 F.2d 313 (D.C. Cir.  1992); and *National Wildlife Federation v. Burford*, 835 F.2d 305 (D.C. Cir. 1987).

I.    **THE ATSA DOES CONFER A PRIVATE RIGHT OF ACTION FOR SCREENERS TO ENFORCE THEIR RIGHTS CREATED BY THE ACT.**

The Defendants' argue that the ATSA fails to create a private right of action and, in the absence of an express grant of that right, the Court must determine whether the statute contains an implied right of action based on the following factors:  (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of a legislative intent…to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.  Defendants' Motion to Dismiss at 6. As applied to the instant case, the Court should find that the ATSA contains an implied right of action.  The ATSA was enacted specifically to create a secure workforce of TSA screeners such as the Plaintiffs.  Further, protecting the TSA screeners' personnel data is vital to the protection of a secure workforce and the security at the airports.  Complaint ¶32.  Therefore, implying a private right of action to enforce a security regime is consistent with the underlying purposes of enacting the ATSA, specifically, to secure the traveling public by creating a federalized security workforce.

There can be no doubt that the Plaintiffs, who are TSA security screening officers, are within the zone of interests created by the ATSA.  After all, the main purpose of the ATSA was to create this federal, security screening workforce.  Therefore, the Plaintiffs' are entitled to review pursuant to the Administrative Procedure Act.  *National Credit Union Admin. v. First Nat. Bank & Trust Co.,* 522 U.S. 479 (1998).  To apply the "zone of interests" test, a court must first discern the interests "arguably ... to be protected" by the statutory provision at issue and the court must

then inquire whether the plaintiff's interests affected by the agency action in question are among

them. *Id*. at 492.   Courts examine "Congress's intent in enacting [the relevant statute] in order to

determine whether [plaintiffs] were meant to be within the zone of interests protected by those

statutes." *Air Courier Conference v. American Postal Workers Union,* 498 U.S. 517, 523-24

(1991). The zone of interests test "denies a right of review if the plaintiffs' interests are so

marginally related to or inconsistent with the statute that it cannot reasonably be assumed that

Congress intended to permit the suit." *Clarke v. Securities Indus. Assoc.,* 479 U.S. 388, 399

(1987).


A TSA screeners' interest in the proper maintenance of his or her personnel data is "arguably"

protected by the ATSA.   After September 11, 2001, Congress identified the lack of a dedicated

screening workforce as the underlying cause of a compromised airport security.   The legislative

history is replete with declarations of Congressional intent to enact a statute which guarantees a

dedicated, career minded, security workforce.   Senator John McCain (R- Az) opined:

> The average turnover, because of the low pay in salary and benefits, at major airports
> is 125 percent per year. At one airport it is as high as 400 percent per year, but that is
> because the people who now are employed as screeners can make more money by
> going down and working at a concession at the same airport…[screeners] are low
> paid, and they are ill-trained.[1]

Representative Allen (D- Me.) made the same point in the House:

> What we have here across the country is a system with private companies hiring
> people at the lowest possible wages with no benefit. The system is broken, it does not
> work, and the public knows that… in Portland, Maine, where I come from, they have

---

[1] CONG. REC. S10,434 (daily ed. Oct. 10, 2001) (statement of Sen. McCain).  Senator McCain
was not alone in identifying the problem that Congress sought to address in enacting the ATSA.
Senator John Warner (R-Va.) asserted that "screeners  are underpaid, overworked, and
undertrained," making screening "haphazard." CONG. REC. S11980 (daily ed. Nov. 16, 2001).

not been able to hire enough security screeners to deal with the crush of people because they pay $7.50 an hour and they will not pay a penny more. It needs to change.[2]

Congress resolved that committed and qualified personnel were necessary for the improvement of screening security.  Senator Paul Sarbanes (D-Md) averred:

> Federalizing security operations throughout U.S. airports is the best answer for improving screener performance. It would raise wages, lower employee turnover, promote career loyalty among screeners, create uniform training among security personnel, and, as a result, strengthen the performance of screeners to discover dangerous objects.[3]

It was believed that improving the working conditions of screeners would have a direct, positive result upon security.  It is common sense that the release of personnel data which compromises the security of the screening personnel would undermine the working conditions of the screeners and as a result, have a direct, negative result upon security.  Consequentially, the release of personnel data compromising the security screening workforce would undermine the Congressional intent to create a committed cadre of screening personnel.

In this case, Plaintiffs challenge the Defendants' failure to implement ATSA, 49 USC §114(f)(7) and §114(f)(9).  There is no question that the enforcement of "security-related regulations and requirements" covering personnel matters is directly within the Plaintiffs' interests.  Additionally, there can be no question that Congress intended to guarantee a good working environment for the screening workforce and to guarantee the protection of security at

---

2 CONG. REC. H7776 (daily ed. Nov. 6, 2001) (statement of Rep. Tom Allen).
3 CONG. REC. S10446 (daily ed. Oct. 10, 2001) ( statement of Sen. Paul Sarbanes); see also Cong. Rec. H7773 (daily ed. Nov. 6, 2001) (statement of Rep. Wynn ("If we want good screeners, we have to have good pay. We have to have benefits. It is clear that private companies, looking at the bottom line, will not provide this kind of pay, this kind of benefit, and provide us

the airports when enacting the ATSA and maintenance and safeguarding of personnel data directly effects the good working environment of the screening workforce and security at the airport. Therefore, the Plaintiffs' have a cause of action with regard to the Defendants' failure to enforce security-related regulations and requirements that pertain to the screeners' personnel records. The Defendants' motion should therefore be denied.

## II.    THE COMPLAINT BEFORE THE COURT IS JUSTICIABLE AS PLAINTIFFS HAVE STANDING AND THE CLAIM IS RIPE.

The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim. *See Warth,* at 501-02 (assuming factual allegations and legal theory of complaint for purposes of standing analysis). This Circuit has repeatedly recognized that proposition. *See Waukesha v. E.P.A.,* 320 F.3d 228, 235 (D.C.Cir.2003); *Am. Fed'n of Gov't Employees, AFL-CIO v. Pierce,* 697 F.2d 303, 305 (D.C.Cir.1982). In Waukesha, this Circuit made clear that

> "Indeed, in reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims."

*Waukesha,* 320 F.3d at 235 (citing *Warth,* 422 U.S. at 502, 95 S.Ct. 2197). This is no less true when, as here, the merits involve protecting employee privacy.

As set forth in the Complaint, Defendants have clearly violated the Plaintiffs' statutory rights when they failed to adequately protect the Personnel Data as required by the Privacy Act and as a

with the kind of quality screeners that we need.").

result, the Personnel Data went missing.  Thus, Plaintiffs present a case-or-controversy within the

meaning of Article III of the United States Constitution.  Their claims are therefore justiciable.

Article III vests "[t]he judicial Power of the United States . . . in one supreme Court, and in

such inferior Courts as the Congress may . . . establish."  U.S. Const. art. III, § 1.  Pursuant to

Article III, the judicial power of the federal courts extends only to "Cases" and "Controversies."

Id. at § 2.  In order to apply the Article III case-or-controversy requirement, the federal courts

have fashioned several "justiciability doctrines," including the doctrines of standing, ripeness and

mootness.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  These doctrines incorporate not only

"essential and unchanging part[s] of the case-or-controversy requirement of Article III," *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992), but prudential elements as well.  *See Fair*

*Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1278

(D.C. Cir. 1994).  Defendants challenged the Plaintiffs' standing and the ripeness of Plaintiffs'

claims.  However, because Plaintiffs have Article III standing and present claims constitutionally

ripe for judicial review, their case is justiciable and Defendants' Motion to Dismiss should be

denied.

### A.  NAMED PLAINTIFFS HAVE INDIVIDUAL STANDING AS THEY HAVE ALLEGED ACTUAL DAMAGE.

Plaintiffs Joseph Jones, Janette Nagel, Cris Soulia, and Don Thomas, as well as the Plaintiff

class, have standing in their own right to challenge the Defendants' breach of the Privacy Act.

For individual standing, a plaintiff must establish:  (1) "an injury in fact – a harm suffered by the

plaintiff that is concrete and actual or imminent, not conjectural or hypothetical;" (2) "causation

– a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) "redressability – a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (internal quotation marks and citation omitted). *See also Defenders of Wildlife*, 504 U.S. at 560-61, *National Treasury Employees' Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). The Court should deny the Defendants' motion to dismiss for lack of standing as the named Plaintiffs can satisfy each of the three elements required for standing.

### (1) Plaintiffs' have experienced an injury in fact.

Plaintiffs Jones, Nagel, Soulia and Thomas were injured-in-fact when the Defendants' failed to take precautions to protect the Personnel Data and when their private Personnel Data went missing. The Defendants' argue that the "Plaintiffs' concerns about future harm are too speculative to state a justiciable injury and therefore to confer standing." Defendants' Motion at 14. The Defendants' fail to recognize that the Plaintiffs' injury-in-fact is the Defendants' earlier failure to protect employee privacy when it neglected to safeguard the information systems it maintained and when, as a result, Plaintiffs' personnel data went missing. The very purpose of the Privacy Act is to "protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary ... to regulate the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896. The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements.

The Plaintiffs are aggrieved precisely because the Defendants' have been repeatedly informed of recurring, systemic, and fundamental deficiencies in its information security and yet, the Defendants' did not rectify these recurring, systemic, and fundamental deficiencies.  Complaint ¶35-36.  As a result, the Defendants disclosed private information when the external hard drive including the Personnel Data of transportation security screeners was lost from a secure area of the Defendants' headquarters office.  Complaint ¶37.  The privacy rights of the individually named Plaintiffs were invaded when the external hard drive including the Personnel Data of transportation security screeners was lost from a secure area of the Defendants' headquarters office. Complaint ¶38.

### (2)  There is a direct and traceable connection between the Plaintiffs' injury and the Defendants' conduct.

The Plaintiffs' injury is directly traceable to the Defendants' conduct as it was Defendants alone who had control over the now missing Personnel Data.  The Defendants' argue that the Plaintiffs' cannot establish standing based on allegations of harm cause by a third party.  Plaintiffs are not arguing standing based on allegations of harm caused by a third party.  Rather, Plaintiffs are seeking to hold the Defendants' responsible for the Defendants' conduct, or lack thereof.  It was the Defendants, not some unnamed third party, who did nothing to adequately secure its employees and former employees' personnel data.  It was the Defendants, not some unnamed third party, who did not encrypt its personnel data.  It was the Defendants, not some unnamed third party, who did not tag and electronically monitor the location of all of Defendants' external hard drives, laptops or any other mobile equipment which stores personnel

data, so that the equipment and data would not be unexplainably lost.  It was the Defendants, not some unnamed third party, who did not destroy all former employees' bank account and routing information within one year of the effective date of resignation or termination.  The Defendants' should not be permitted to wiggle out of their responsibility by trying to suggest that some third party is at fault.  Defendants' conduct was the sole cause of Plaintiffs' injury.

### (3) The requested relief will redress the injury.

The Privacy Act is uniquely framed in that it recognizes a civil action for agency misconduct fitting within any of four categories and then makes separate provision for the redress of each. 5 U.S.C. §§ 552a(g)(1)(A)-(D).  In the instant case, the Plaintiffs' claim falls within the catchall category for someone who suffers an "adverse effect" from a failure not otherwise specified in the remedial section of the Privacy Act. §552a(g)(1)(D).  The Plaintiffs' claim alleges a breach of the Privacy Act's requirement that agencies that maintain a system of records to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  5 U.S.C. §552a(e)(10).

When a court determines that the agency acted in an "intentional or willful" manner, the government is liable for "actual damages sustained by the individual ..., but in no case shall a person entitled to recovery receive less than ... $1,000." §552a(g)(4)(A).  The Plaintiffs' argue that the Defendants' failure to establish appropriate administrative, technical, and physical

safeguards was intentional or willful as evidenced by their notice of deficiency and failure to attend to the deficiencies.  Complaint ¶35-39.


In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court analyzed whether the plaintiff was entitled to monetary relief when no proof of actual, financial loss or damages was presented. While the Supreme Court held that "actual damages" must be proven in order for a court to award monetary relief, the Supreme Court left open the question of whether equitable relief is available.  It stated, "[t]he Privacy Act says nothing about standards of proof governing equitable relief that may be open to victims of adverse determinations or effects…."  *Id.* at 619 n.1. Consistent with *Doe v. Chao*, while the Plaintiffs' have not pled current, actual, financial loss, this does not foreclose standing as equitable relief remains available.


The Plaintiffs' seek equitable relief as meaningful redress from the injury caused them.  As the Defendants' have been on notice for quite some time that their computer systems are insecure and have not sought to rectify these deficiencies, requiring *in camera* review of Defendants' security procedures taken to comply with the Privacy Act by a neutral Court is a meaningful remedy for the Plaintiffs.  See Complaint ¶35-39 and Complaint Demand No. 1.   A declaration of Defendants' violation will provide meaningful relief in the instant case.  Complaint Demand No. 3 and 4.  Providing equitable and injunctive relief for Plaintiffs' to ensure that the missing data is not further cause of (financial) injury is likewise meaningful relief.  Complaint Demand No. 5-9.  Similarly, ordering the Defendants to create a security procedure that is consistent with the Privacy Act -- such as ordering the Defendants to tag and electronically monitor the location of all of Defendants' external hard drives, laptops or any other mobile equipment which stores

personnel data, encrypt all personnel data, and destroy all former employee's bank account and routing information after six months and within one year of the effective date of resignation or termination – will provide meaningful relief in the instant case.  Complaint Demand No. 12. As there are meaningful forms of redress available to the Plaintiffs, the Defendants' breach of the Privacy Act gives rise to this cause of action, and the Plaintiffs' have been injured by the Defendants' statutory violation, Plaintiffs' have individual standing.


### B.  THE UNION PLAINTIFFS HAVE REPRESENTATIONAL STANDING.


The Union Plaintiffs have standing in its representational capacity to bring this lawsuit.  It is well-established that an organization may have standing to bring a lawsuit on behalf of its members.  *International Union, United Automobile, Aerospace and Agricultural Implement Workers of American v. Brock*, 477 U.S. 274, 280 (1986)(citations omitted); and *Allee v. Medrano*, 416 U.S. 802 (1974)( a union has standing as a named plaintiff to raise any of the claims that a member of the union would have standing to raise.).  Representational standing exists where the organization's members would have standing to sue in their own right, the interests that the organization seeks to protect are germane to its purposes and neither the claims asserted, nor the relief requested, requires the individual participation of the organization's members. *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167 (2000); *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342-3 (1977); and *District No. 1, Pacific Coast Dist., Marine Engineers' Beneficial Ass'n v. Maritime Admin*; 215 F.3d 37 (D.C. Cir. 2000)(Members loss of jobs sufficient to confer standing on union plaintiff).  The Defendants errs in their assertion that the Unions' membership do not have standing in their own

right and that the claims asserted require the individual participation of an individual member.

As the Union Plaintiffs meet all of the elements for representational standing, the Court should

deny the Defendants' motion to dismiss.

As argued above, the named Plaintiffs' and the class members have individual standing.  The

interests that the Union Plaintiffs' seek to protect are germane to its purposes; the Plaintiffs' note

that the Defendants' do not argue that the Union Plaintiffs' cannot meet this second prong of

representational standing.  Plaintiff AFGE is a labor organization representing some 600, 000

federal civilian employees and retirees in over a thousand affiliated locals throughout the federal

government, including the Transportation Security Administration (TSA). Complaint ¶3.  AFGE

and its affiliated Local 1, Local 1234, and Local 777 represent the interests of employees by,

among other things, lobbying and litigating employees' constitutional and statutory rights in

federal, state and administrative fora.  Complaint ¶3-6.   Protecting the legal rights of federal

employees in their dealings with their employer is unquestionably central to the organization's

purpose.  Thus, protecting the privacy rights of federal employees pursuant to the Privacy Act is

clearly germane to the Plaintiff Unions' organizational purpose.  *Hunt*, 432 U.S. at 342-43.

This lawsuit is not dependent on any one member's participation with regard to liability or

the majority of relief requested.  In *UAW v. Brock*, 477 U.S. 274, 287-8 (1986), the Supreme

Court evaluated whether the union could litigate trade readjustment allowance benefits due to its

members. The Supreme Court recognized that even when unique facts of a member's situation

will have to be considered, a union still has standing to litigate an action when it is not dependant

on "individual members' participation" and when it can "still ensure that the remedy, if granted,

will benefit those members actually impaired." *Id. See also Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513 (6th Cir., 2001)(NAACP had representational standing to litigate allegations of discrimination on the basis of race in recruitment, selection, and hiring of employees.  By nature of allegations, individual members' participation would be necessitated.  Nevertheless, the court focused on whether member had standing, not whether the individual members' participation was necessitated.); and *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 379 n. 23 (6th Cir., 1998)(Representational standing found when association litigated on behalf of its members alleging a 4th Amendment Constitutional violation, even though the 4th Amendment claim required a showing of particularized individual injury.).  In the instant case, the Defendants' conduct with regard to security measures implemented, or not implemented, to protect the Personnel Data consistent with the requirements of the Privacy Act will not rely on the participation of any union member.  While the unique facts of individual members may have to be considered for a portion of the relief requested, such as financial loss, the Plaintiff Unions are not reliant on any one member's participation in order to secure the bulk of the remedies requested, in particular the remedy of declaratory and injunctive relief.  Therefore, the Union Plaintiffs have representational standing to bring this action.

## C.  THE CLAIM IS RIPE.

In addition to having Article III standing, Plaintiffs' claims are also constitutionally ripe for judicial review.  The doctrine of ripeness, like standing, incorporates both constitutional and prudential elements.  *See Defenders of Wildlife*, 504 U.S. at 560.  The constitutional ripeness requirement is coextensive with the constitutional standing requirement of injury in fact.

Therefore, as the Court of Appeals for the District of Columbia Circuit held in *DKT Memorial Fund, Ltd. v. Agency for International Development*, 887 F.2d 275 (D.C. Cir. 1989), "the constitutional requirement for ripeness *is* injury in fact." Id. at 297 (emphasis added). Because Plaintiffs have met the standing requirement of injury in fact*, see supra*, Plaintiffs present a claim constitutionally ripe for judicial review.

Plaintiffs claims are likewise prudentially ripe. A plaintiff's claim is prudentially ripe depending on "'[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *NTEU v. U.S.*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)(quoting *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). The Defendants argue that the instant claim is not ripe for adjudication "if, as here, 'it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Defendants' Motion to Dismiss at 16 (quoting *Texas v. U.S.*, 523 U.S. 296, 300 (1998). The Defendants' aver that the "conclusion [that the claim is not ripe] is evident from the circumstance giving rise to this lawsuit." *Id.* Plaintiffs disagree. As argued previously, the Defendants' err in their failure to recognize that the Defendants' earlier failure to secure the hard-drive so that such a loss of personnel data could occur is the harm and injury already sustained. Plaintiffs' are not waiting for additional harm and injury albeit cognizant that future, additional harm may occur from the loss of personnel data. Therefore, the issues before the Court are already fit for adjudication.

This is *not* a case that implicates the "usually unspoken element of the rationale underlying the ripeness doctrine: If we do not decide it now, we may never have to." *NTEU v. U.S.*, at 1431. Defendants demonstrated reckless disregard for privacy rights when it failed to effectively secure

the external hard drive that maintained the personal information of its personnel workforce.

Complaint ¶3.  As a result, Plaintiffs' personnel data went and remains missing.  Complaint

¶28-30.  Plaintiffs' have no reason to believe that the remaining personal, personnel data in the

Defendants' possession are any more secure.  Delaying litigation on this issue, therefore, will

impede the declarative, equitable, and injunctive remedies sought by the Plaintiffs.  In contrast,

allowing the suit to go forward will not create hardship for the Defendants as the Plaintiffs' seek

to require Defendants' to perform what is already required of them by law.  Therefore, the instant

complaint is ripe for adjudication.


### III.    THE PLAINTIFFS' HAVE STATED A CLAIM WITH RESPECT TO THE PRIVACY ACT.

The Defendants' argue that the Plaintiffs' allegations are deficient in that they have not pled

(1) an intentional and willful element, (2) the adverse effect element, and (3) the actual damages

element.  The Plaintiffs' claim alleges a breach of the Privacy Act's requirement that agencies

that maintain a system of records to "establish appropriate administrative, technical, and physical

safeguards to insure the security and confidentiality of records and to protect against any

anticipated threats or hazards to their security or integrity which could result in substantial harm,

embarrassment, inconvenience, or unfairness to any individual on whom information is

maintained."  5 U.S.C. §552a(e)(10).


The Plaintiffs' have pled each element of this violation.  The Defendants' engaged in willful

and intentional disregard of informational technology security protocols required by the Privacy

Act.  TSA maintains a system of personnel records that includes by name the social security

number, date of birth, payroll information, bank account and routing information for its current

and former screening personnel.  Complaint ¶3.  Release of these records could result in

substantial harm and inconvenience.  Complaint ¶¶41-43.  Defendants have been repeatedly

informed of recurring, systemic, and fundamental deficiencies in its information security.

Complaint ¶35.  Notwithstanding this notice, Defendants displayed reckless disregard in securing

Personnel Data.  Complaint ¶36.


The Defendants' failure to create appropriate security measures had the adverse effect of loss of a

significant amount of private, personnel data.  On Thursday, May 3, 2007, the TSA became aware of

a data security incident involving approximately 100,000 archived employment records of

individuals employed by the agency from January 2002 until August 2005. Specifically, an external

hard drive containing personnel data, including but not limited to name, social security number, date

of birth, payroll information, bank account and routing information, was discovered missing from a

controlled area at the TSA Headquarters Office of Human Capital.  Defendants cannot account for

the present location of the external hard drive, or for the present location of the Personnel Data

contained therein.  Complaint ¶28-30.


The Defendants' failure to create appropriate security measures and the loss of a significant

amount of private, personnel data, had further adverse effects on the individually named Plaintiffs.

Specifically, the Plaintiffs and the membership of the union Plaintiffs experienced adverse effects

due to Defendants' failure to safeguard the Personnel Data and/or disclosure, including but not

limited to, embarrassment, inconvenience, mental distress, concern for identity theft, concern for

damage to credit report, concern for damage to financial suitability requirements in employment, and

future substantial financial harm.  Complaint ¶¶41-42.

The Plaintiffs also pled actual damages.  As discussed above, while "actual damages" must be proven in order for a court to award monetary relief, the Supreme Court left open the question of whether equitable relief is available without a showing of actual monetary damages.  *Doe v. Chao*, 540 U.S. 614, 619 n.1. (2004).  The Plaintiffs experienced actual damages when their privacy rights were invaded when the external hard drive including the Personnel Data of transportation security screeners was lost from a secure area of the Defendants' headquarters office.  Complaint ¶38.  Thus, the Plaintiffs' have stated a claim under the Privacy Act's "adverse effects" clause.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

Respectfully submitted,


\_\_\_/s/Mark D. Roth_____
Mark D. Roth (D.C. Bar #235473)
General Counsel

\_\_\_/s/Charles A. Hobbie_____
Charles A. Hobbie (D.C. Bar#283499)
Deputy General Counsel

\_\_\_/s/Gony Frieder_____
Gony Frieder (D.C. Bar #457706)
Assistant General Counsel
American Federation of Government Employees,
   AFL-CIO
80 F Street, NW
Washington, D.C. 20001
(202) 639-6434

Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss was sent via ECF this 23rd day of July, 2007 upon:

Jacqueline Coleman Snead, Trial Attorney
Unites States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm 7214
Washington, DC 20530
Jacqueline.snead@usdoj.gov

\_/s/ Gony Frieder Goldberg_____
Gony Frieder Goldberg, AGC